## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| CHICAGO WINE COMPANY,<br>DEVIN WARNER, STAN SPRINGER,<br>CYNTHIA SPRINGER, and DENNIS NEARY,<br><br>            Plaintiffs,<br><br>            v.<br><br>ERIC HOLCOMB, TODD ROKITA, and<br>JESSICA ALLEN, [1]<br><br>            Defendants.<br>_____<br><br>WINE & SPIRITS DISTRIBUTORS OF<br>INDIANA,<br><br>            Intervenor Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:19-cv-02785-TWP-DML<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Cross-Motions for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by the parties. Plaintiffs Chicago Wine Company ("Chicago Wine"), Devin Warner ("Warner"), Stan Springer ("Mr. Springer"), Cynthia Springer ("Ms. Springer"), and Dennis Neary ("Neary") (collectively, "Plaintiffs") filed their Motion on July 2, 2020, (Filing No. 49). Thereafter, Defendants Eric Holcomb ("Governor Holcomb"), Todd Rokita ("Rokita"), and Jessica Allen ("Allen") (collectively, "State Defendants") (Filing No. 61), and Intervenor Defendant Wine & Spirits Distributors of Indiana ("WSDI"), (Filing No. 57), filed cross motions. The Plaintiffs initiated this lawsuit against the State Defendants to challenge the constitutionality of Indiana Code §§ 7.1-3-21-3, 7.1-5-11-1.5(a), and 7.1-3-15-3(d). After WSDI

---

[1] Subsequent to the filling of this cause of action, Todd Rokita was elected as Indiana Attorney General thereby replacing Curtis Hill as a Defendant in this matter, and Defendant David Cook was replaced as Chair of the Indiana Alcohol and Tobacco Commission by Jessica Allen (*see* Filing Nos. 75 and 77, respectively).

intervened as a defendant, the parties filed their Cross-Motions for Summary Judgment on the constitutional challenge.  For the reasons explained below, the Court **grants in part and denies in part** each of the Motions.

## I.   BACKGROUND

The Plaintiffs brought this civil action against the State Defendants pursuant to 42 U.S.C. § 1983 to challenge the constitutionality of three Indiana statutes that the Plaintiffs allege prohibit out-of-state wine retailers from selling and delivering wine directly to Indiana consumers but allow in-state wine retailers to do so.

Plaintiff Chicago Wine is a wine retailer located in Chicago, Illinois.  It delivers wine to its customers in Illinois and in other states where it is legal to do so.  It has customers in Indiana who have asked for delivery of wine, but cannot not ship wine to Indiana customers because it does not have an Indiana liquor permit, which it cannot get because it is not an Indiana resident. Chicago Wine would apply for a license to deliver wine directly to Indiana consumers if one existed and if there were no residency requirements.  Chicago Wine would then deliver wine in its own vehicles to Indiana customers who live near Chicago and would deliver wine by common carrier to those who live beyond its delivery area if it were legal to do so.  Plaintiff Warner is a professional wine consultant, advisor and merchant who resides in California, and one of the principals of Chicago Wine (Filing No. 49-2 at 1–2).

Plaintiffs Mr. and Ms. Springer are a married couple residing in Indianapolis, Indiana. Mr. Springer is a businessman, and Ms. Springer is a practicing attorney.  They are wine collectors and consumers of fine wine. They enjoy drinking wine, particularly Argentinian Malbecs, some of which are difficult to find in Indiana. They have attempted to order wine from out-of-state retailers to add to their wine collection, but were refused because of Indiana's prohibition. They contacted

Binny's Beverage Depot in Chicago, Illinois, but were informed that it will not deliver wine to Indiana consumers but would do so if Indiana law is changed (Filing No. 49-3 at 1–2).

Plaintiff Neary is a resident of Indianapolis, Indiana, and he has his own video production business. In the past, Neary has tried to order wine and have it delivered to him, but out-of-state wine retailers have not shipped wine to him because of Indiana's prohibition. Neary recently contracted Covid-19 and has since recovered. However, this has caused Neary to be more careful about in-store shopping. He looks to the internet to be able to purchase wine and have it delivered to his home (Filing No. 49-4 at 1–2).

The State Defendants are Governor Holcomb, the Governor of Indiana, the chief executive officer of the State; Rokita, who is the Attorney General of Indiana; and Allen, who is the Chairwoman of the Indiana Alcohol and Tobacco Commission. The State Defendants are sued in their official capacities (Filing No. 16 at 5–6; Filing No. 75; Filing No. 77).

Intervenor Defendant WSDI is an unincorporated association composed of members holding wine and liquor wholesaler's permits in Indiana. WSDI is an affiliate of the Wine & Spirits Wholesalers of America, which represents wine and liquor wholesalers nationwide. WSDI represents members before the Indiana General Assembly, state agencies, regulatory bodies, courts, alcohol beverage industry organizations, and the general public, (Filing No. 19 at 1–2).

Title 7.1 of the Indiana Code governs all things alcohol-related in the State of Indiana. Indiana Code § 7.1-3-21-3 provides, "The commission shall not issue an alcoholic beverage retailer's or dealer's permit of any type to a person who has not been a continuous and bona fide resident of Indiana for five (5) years immediately preceding the date of the application for a permit."

Indiana Code § 7.1-5-11-1.5(a) states,

3

Except as provided in IC 7.1-3-26,[2] it is unlawful for a person in the business of selling alcoholic beverages in Indiana or outside Indiana to ship or cause to be shipped an alcoholic beverage directly to a person in Indiana who does not hold a valid wholesaler permit under this title. This includes the ordering and selling of alcoholic beverages over a computer network (as defined by IC 35-43-2-3(a)).

And Indiana Code § 7.1-3-15-3(d) provides,

However, a wine dealer who is licensed under IC 7.1-3-10-4[3] may deliver wine only in permissible containers to a customer's residence, office, or designated location. This delivery may only be performed by the permit holder or an employee who holds an employee permit. The permit holder shall maintain a written record of each delivery for at least one (1) year that shows the customer's name, location of delivery, and quantity sold.

The Plaintiffs' Amended Complaint challenges Indiana Code §§ 7.1-3-21-3 and 7.1-5-11-1.5(a) specifically. The Plaintiffs allege these code provisions violate the Commerce Clause and the Privileges and Immunities Clause of the United States Constitution. In their Amended Complaint, "[t]he plaintiffs seek an injunction barring the defendants from enforcing these laws, practices and regulations, and requiring them to allow out-of-state wine retailers to sell, ship, and deliver wine to Indiana consumers upon equivalent terms as in-state wine retailers." (Filing No. 7 at 2.)

The Plaintiffs expanded their constitutional challenge in their Motion for Summary Judgment to explicitly include Indiana Code § 7.1-3-15-3(d) with §§ 7.1-3-21-3 and 7.1-5-11-1.5(a). However, the Plaintiffs noted in their summary judgment brief that "[t]he Complaint also alleged a violation of the Privileges and Immunities Clause, but Plaintiffs are not seeking summary judgment on that issue." (Filing No. 49 at 6.) In their summary judgment brief, the Plaintiffs assert, "The laws should be declared unconstitutional and the defendant[s] enjoined from enforcing them." *Id.* at 30.

---

[2] Indiana Code § 7.1-3-26 concerns the issuance of a direct wine seller's permit and the requirements related to such a permit. This chapter of the Indiana Code allows wineries (not wine retailers) to sell and ship directly to consumers.
[3] Indiana Code § 7.1-3-10-4 concerns the issuance of a liquor dealer's permit to a package liquor store.

4

After the Plaintiffs filed their Motion for Summary Judgment, the State Defendants and WSDI each filed Cross-Motions for Summary Judgment, asking the Court to uphold the three challenged statutes as constitutionally valid as part of Indiana's three-tier system for the manufacture, distribution, and sale of alcoholic beverages.

## II.       SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).   In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).   Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence."  *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

## III.      DISCUSSION

Plaintiffs bring three claims in their Amended Complaint: Count I: Commerce Clause Violation for Discrimination; Count II: Violation of the Commerce Clause for Economic Protectionism; and Count III: Privileges and Immunities Clause Violation. In their Cross-Motions for Summary Judgment, the parties argue the constitutionality of Indiana Code §§ 7.1-3-21-3, 7.1-5-11-1.5(a), and 7.1-3-15-3(d) under the Commerce Clause of the United States Constitution. The

Court will first discuss legal principles governing Commerce Clause and Twenty-first Amendment claims and then turn to each of the challenged statutes.

A.      **Legal Principles Governing Commerce Clause and Twenty-First Amendment Claims**

The Commerce Clause provides that "the Congress shall have Power . . . to regulate Commerce . . . among the several States." Art. I, § 8, cl. 3. Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a "negative" aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.

*Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994).

The Twenty-first Amendment to the United States Constitution provides, "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST., AMEND. XXI, § 2. Section two of the Twenty-first Amendment gives power to the states to regulate transportation and importation of alcoholic beverages.

The tug-of-war between the Commerce Clause's prohibition against states unjustifiably burdening interstate commerce and the Twenty-first Amendment's grant of power to the states to regulate the flow of alcoholic beverages has generated much litigation. The United States Supreme Court and the Seventh Circuit have provided guidance to the district courts for deciding Commerce Clause challenges to states' liquor laws.

The Seventh Circuit has noted,

The Commerce Clause grants Congress the power to "regulate Commerce . . . among the several States." Art. 1, § 8, cl. 3. The positive grant of power implies that "state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm*, 544 U.S. at 472.

*Lebamoff Enters. v. Rauner*, 909 F.3d 847, 851 (7th Cir. 2018). The court further noted,

[T]he states [have] greater leeway to regulate alcoholic beverages than they enjoy with respect to any other product. But the Supreme Court has decided that this

> leeway is not boundless. Drawing lines that are sometimes difficult to follow, it has
> decreed that states may not infringe upon other provisions of the Constitution under
> the guise of exercising their Twenty-first Amendment powers.

*Id.* at 849.

The United States Supreme Court has explained,

> The Twenty-first Amendment grants the States virtually complete control over
> whether to permit importation or sale of liquor and how to structure the liquor
> distribution system. . . . State policies are protected under the Twenty-first
> Amendment when they treat liquor produced out of state the same as its domestic
> equivalent.

*Granholm v. Heald*, 544 U.S. 460, 488–89 (2005) (internal citations and quotation marks omitted).

Very recently, the Supreme Court discussed the relationship between the Commerce

Clause and the Twenty-first Amendment:

> [B]ecause of §2 [of the Twenty-first Amendment], we engage in a different inquiry.
> Recognizing that §2 was adopted to give each State the authority to address alcohol-
> related public health and safety issues in accordance with the preferences of its
> citizens, we ask whether the challenged requirement can be justified as a public
> health or safety measure or on some other legitimate nonprotectionist ground.
> Section 2 gives the States regulatory authority that they would not otherwise enjoy,
> but as we pointed out in *Granholm*, "mere speculation" or "unsupported assertions"
> are insufficient to sustain a law that would otherwise violate the Commerce Clause.
> 544 U. S., at 490, 492, 125 S. Ct. 1885, 161 L. Ed. 2d 796. Where the predominant
> effect of a law is protectionism, not the protection of public health or safety, it is
> not shielded by §2.

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2474 (2019). "[T]he Twenty-

first Amendment can save an otherwise discriminatory regulation only if it is demonstrably

justified by a valid factor unrelated to economic protectionism." *Lebamoff*, 909 F.3d at 853

(internal citation and quotation marks omitted).

In distilling the Supreme Court's Twenty-first Amendment decisions, the Seventh Circuit

summarized that the

> [Supreme] Court extracts three principles from its Twenty-first Amendment case
> law: (1) the Amendment does not save state laws that violate other provisions of

the Constitution (*i.e.* clauses other than the Commerce Clause), (2) the Amendment "does not abrogate Congress' Commerce Clause powers with regard to liquor," and (3) "state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause." *Granholm*, 544 U.S. at 486–87.

*Id.* at 854.

"A state law that discriminates explicitly ('on its face,' lawyers are fond of saying) is almost always invalid under the Supreme Court's commerce jurisprudence." *Baude v. Heath*, 538 F.3d 608, 611 (7th Cir. 2008). However, on the other hand,

"[W]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970). State laws regularly pass this test, see *Davis*, 128 S. Ct. at 1808-09, for the Justices are wary of reviewing the wisdom of legislation (after the fashion of *Lochner*) under the aegis of the commerce clause.

*Id.*

The Seventh Circuit explained,

When some form of heightened scrutiny applies--as it does if a law's own terms treat in-state and out-of-state producers differently--then the burdens of production and persuasion rest on the state. But when challenging a law that treats in-state and out-of-state entities identically, whoever wants to upset the law bears these burdens.

*Id.* at 613.

## B.   Indiana Code § 7.1-3-21-3

The first statute challenged by the Plaintiffs, Indiana Code § 7.1-3-21-3, explicitly requires a person or entity to be an Indiana resident for five years preceding the date of their permit application in order to be eligible to receive an alcoholic beverage retailer's or dealer's permit of any type. The Plaintiffs argue that this statute, on its face, discriminates against out-of-state wine retailers to the benefit of in-state wine retailers and, thus, violates the Commerce Clause. The Plaintiffs note, "The Supreme Court has ruled that a 'residency requirement for retail license

applicants blatantly favors the State's residents and has little relationship to public health and safety, [so] it is unconstitutional' under the Commerce Clause. *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. at 2457." (Filing No. 49 at 18–19.)

The State Defendants respond, "The Indiana Alcohol and Tobacco Commission ('the Commission') has been enjoined from enforcing . . . Ind. Code § 7.1-3-21-3, so any claim stemming from that statute is moot." (Filing No. 62 at 6.) They further explain,

> The District Court for the Southern District of Indiana has enjoined the Commission from enforcing the Residency Requirement for alcoholic beverage permits. *See Indiana Fine Wine & Spirits, LLC v. Cook, et al.*, No. 120CV00741TWPMJD, 2020 WL 2319740, at *10 (S.D. Ind. May 11, 2020). The State does not analyze the Plaintiffs' claims regarding this requirement because the issue is moot.

*Id.* at 7. WSDI makes a similar concession regarding Indiana Code § 7.1-3-21-3. (*See* Filing No. 58 at 5 ("The District Court for the Southern District of Indiana has entered an injunction against Indiana enforcing its residency requirements for alcoholic beverage permits.").)

Indeed, this Court recently analyzed an Indiana alcohol permit residency requirement under Indiana Code § 7.1-3-21-5.4(b) in the case of *Indiana Fine Wine & Spirits v. Cook*, 459 F. Supp. 3d 1157 (S.D. Ind. 2020). The Court reviewed and applied the Supreme Court's recent decision in *Tennessee Wine & Spirits Retailers Association v. Thomas*, 139 S. Ct. 2449 (2019), and determined that Indiana's residency requirement violated the Commerce Clause and could not be enforced. The same applies in this case as acknowledged by the State Defendants and WSDI. Therefore, summary judgment is **granted** in favor of the Plaintiffs, and the State Defendants (and their agents) may not enforce Indiana Code § 7.1-3-21-3 as a statutory requirement for the issuance of "an alcoholic beverage retailer's or dealer's permit of any type." The five-year residency requirement of Section 7.1-3-21-3 is declared violative of the Commerce Clause of the United States Constitution and may not be enforced.

C. **Indiana Code § 7.1-3-15-3(d)**

The Plaintiffs also challenge the constitutionality of Indiana Code § 7.1-3-15-3(d), which requires that any wine delivery to consumers be made by the permit holder or an employee who holds an employee permit.

Indiana wine retailers may obtain a wine dealer permit under Section 7.1-3-15-3 and a package store permit under Section 7.1-3-10-4, and the combination of these two permits allows the permit holder to sell wine at retail and deliver the wine to the consumer. Consequentially, Plaintiffs argue, a wine retailer outside of Indiana may not sell wine and deliver it to Indiana consumers because Indiana will not issue a permit to out-of-state retailers. They argue that the State Defendants have conceded that "[a]ny application would need to meet Indiana's licensing standards, which would include maintaining a physical presence in Indiana," and "there is no obvious permit" that would allow a retailer to sell and deliver wine directly to consumers from an out-of-state premises (Filing No. 49-23 at 2; Filing No. 49-24 at 1–2).

The Plaintiffs assert that different treatment of in-state and out-of-state businesses constitutes unlawful discrimination if the discrimination benefits in-state economic interests and burdens out-of-state interests, and the different treatment in this case meets that standard. The statute benefits in-state wine retailers by shielding them from competition and giving them the exclusive right to make home deliveries, which is a significant economic advantage especially during the current pandemic. When a consumer cannot buy wine from an out-of-state retailer, they will buy from an in-state retailer, which shifts economic resources from out-of-state to in-state businesses. The Plaintiffs argue the statute plainly is economically protectionist. Plaintiffs argue that Chicago Wine cannot establish and maintain a physical presence in Indiana for the purpose of delivering wine to Indiana consumers because such a physical presence would

be economically unfeasible. This, Plaintiff's assert, is another way the State Defendants are unlawfully discriminating against out-of-state businesses and burdening interstate commerce.

The Plaintiffs further contend that the restriction in Section 7.1-3-15-3(d) that wine "delivery may only be performed by the permit holder" in its own vehicles, and not by common carrier, is an indirect form of discrimination. Most wine sold in the United States is available only from out-of-state retailers. Most out-of-state retailers who sell wine online are located far beyond Indiana's borders--a majority of which are state of California-- and they cannot afford to deliver a few cases of wine by driving their own vehicles from California to Indiana. It is cost-prohibitive even for Chicago Wine to use its own vehicles to deliver to much of Indiana. The effect of this restriction is discriminatory and protectionist. And even if Indiana were to license out-of-state retailers and permit them to deliver using their own vehicles, Plaintiffs contend the effect would be the same as an explicit ban.

The Plaintiffs argue the statute additionally violates the Indiana consumer plaintiffs' right to purchase wine in interstate commerce. Plaintiffs point out that they have a right to transact in alcoholic beverage sales across state lines, however, Indiana's laws make it difficult if not impossible to buy rare and older wines that are not available in Indiana. Thus, they are being denied their right to engage in interstate commerce. Moreover,

> The discriminatory effect of the ban on using common carriers is not 100%. Some out-of-state retailers located close to Indiana's borders could use their own vehicles to make home deliveries, and some Indiana retailers located at the far ends of the state cannot deliver to the opposite end as a practical matter. These facts are irrelevant. A statute discriminates against interstate commerce if the *overall effect* of the law is to disadvantage out-of-state businesses and benefit in-state ones, even if a few out-of-state firms are not harmed and a few in-state firms may also be burdened.

(Filing No. 49 at 25 (emphasis in original; internal citations omitted).)

The State Defendants and WSDI argue that statutes having a disparate impact on interstate commerce (rather than facial discrimination) are subject to strict scrutiny only if the impact is "powerful, acting as an embargo on interstate commerce without hindering intrastate sales." *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131 (7th Cir. 1995). If, instead, the discriminatory effect is "weak" or "mild," the flexible balancing standard articulated in *Pike v. Bruce Church* applies. *Id.* They argue that Indiana's alcohol laws challenged by the Plaintiffs do not violate the nondiscrimination principles of *Granholm* and do not manifest the kinds of blatant economic protectionism and facial discrimination that cannot be shielded by the Twenty-first Amendment. The requirement of face-to-face delivery is not facially discriminatory and likely has no disparate impact on out-of-state commerce. Thus, the law's impact is only on the method of distribution, which the Commerce Clause does not affect and the Twenty-first Amendment specifically protects.

The State Defendants and WSDI next argue the Plaintiffs have not shown that Indiana is treating Indiana wine any differently from wine produced in any other state. If wine is delivered by a wine dealer, delivery must be made by the permit holder or a trained employee. The statute makes no distinction between in-state and out-of-state wine dealers; both may deliver wine only by the permit holder or an employee who holds an employee permit.

They assert that, even if there is some incidental impact on interstate commerce, any burden is far outweighed by the public health and safety benefits of the regulation. Afterall, ease of access and availability of alcohol impacts the health and safety of Indiana citizens in the form of drunk driving, domestic violence, binge drinking and its health effects, and the transmission of sexually-transmitted diseases due to increased risky sexual behavior. Indiana's regulation is part of its

overall three-tier system to control the amount of alcohol in the State, which helps limit health and safety concerns.

The State Defendants and WSDI assert that "keeping alcohol out of minors' hands is a legitimate, indeed a powerful, [local] interest." *Baude*, 538 F.3d at 614. The Seventh Circuit previously has accepted the State's reasoning that face-to-face verification for wine shipments would reduce the number of shipments that go to minors. *Id.* at 614–15. They contend,

> Under *Pike*, when statutes regulating wine distribution are facially neutral, and therefore the threshold question is the degree of burden on interstate commerce, Section 2 of the Twenty-first Amendment tips the scales in favor of the State, even in close cases. After all, "[t]he aim of the Twenty-first Amendment was to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use." *Granholm*, 544 U.S. at 484. *Granholm* expressly reaffirmed that "the Twenty-first Amendment grants the states virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *Id.* at 488. Moreover, the Seventh Circuit has recognized that *Pike* balancing does not "authorize a comprehensive review of [a] law's benefits, free of any obligation to accept the legislature's judgment." *See Nat'l Paint*, 45 F.3d at 1130.

(Filing No. 62 at 33.)

The Court notes that this same statute, Indiana Code § 7.1-3-15-3(d), was challenged nearly ten years ago in the case of *Lebamoff Enters. v. Snow*, 757 F. Supp. 2d 811 (S.D. Ind. 2010). There, the plaintiff challenged the statute's prohibition against using a common carrier to deliver wine to consumers and the requirement of the wine retailer to deliver the wine itself. While the plaintiff in that case was an in-state wine retailer, it advanced arguments that the statute violated the Commerce Clause because of its alleged facial discrimination and its burden on interstate commerce. In that case, the State advanced nearly identical arguments to support the statute as it advances in this case.

The court considered what level of scrutiny was appropriate to evaluate Indiana Code § 7.1-3-15-3(d) and determined that the statute was subject to the *Pike* balancing test rather than

strict scrutiny because the statute was not facially discriminatory. *Snow*, 757 F. Supp. 2d at 820–21. The court went on to analyze Indiana Code § 7.1-3-15-3(d) under the *Pike* test and reached the conclusion that the statute serves legitimate local interests, and any burden on commerce was not clearly excessive in relation to the local interests. *Id.* at 821–26. The plaintiff appealed the district court's decision, and the Seventh Circuit affirmed. *See Lebamoff Enters. v. Huskey*, 666 F.3d 455 (7th Cir. 2012).

The Court concludes, like the court concluded in *Snow*, that Indiana Code § 7.1-3-15-3(d) is not facially discriminatory. The statute treats in-state and out-of-state wine retailers identically: their "delivery may only be performed by the permit holder or an employee who holds an employee permit." In reaching its decision in this case, the Court adopts the analysis and conclusions regarding Section 7.1-3-15-3(d) from the *Snow* decision. *See Snow*, 757 F. Supp. 2d at 820–26.

The Plaintiffs designated evidence from Tom Wark and a 2003 Federal Trade Commission study to suggest that online sales of wine and direct shipment do not result in minors obtaining alcohol more easily (Filing No. 49-20; Filing No. 49-22). This same 2003 Federal Trade Commission study was cited with approval in *Granholm* in 2005 but was subsequently considered and essentially rejected in the *Snow*, *Huskey*, and *Baude* cases, and the Seventh Circuit noted,

> After the Supreme Court held in *Crawford v. Marion County Election Board*, 128 S. Ct. 1610, 170 L. Ed. 2d 574 (2008), that a belief that in-person verification with photo ID reduces vote fraud has enough support to withstand a challenge under the first amendment, it would be awfully hard to take judicial notice that in-person verification with photo ID has no effect on wine fraud and therefore flunks the interstate commerce clause.

*Baude*, 538 F.3d at 614.

Since the decision in *Snow* and its affirmance by *Huskey*, the United States Supreme Court has issued the 2019 decision in *Tennessee Wine & Spirits Retailers Association v. Thomas*. The Supreme Court explained that "because of §2 [of the Twenty-first Amendment], we engage in a

different inquiry." *Tenn. Wine*, 139 S. Ct. at 2474. "Recognizing that §2 was adopted to give each State the authority to address alcohol-related public health and safety issues in accordance with the preferences of its citizens, we ask whether the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." *Id.* "Section 2 gives the States regulatory authority that they would not otherwise enjoy, but . . . [w]here the predominant effect of a law is protectionism, not the protection of public health or safety, it is not shielded by §2." *Id.*

The State Defendants have presented evidence in the form of a sworn declaration from Brian Stewart, an Indiana State Excise Police sergeant, (Filing No. 63-1), which supports the argument that the statute helps advance the State's interests in keeping alcohol out of the hands of minors, controlling the quantity of alcohol in the State to curtail public health concerns, and protecting against unsafe or counterfeit products. These public health and safety benefits justify Indiana Code § 7.1-3-15-3(d) on "nonprotectionist grounds". Indiana Code § 7.1-3-15-3(d) withstands the Plaintiffs' Commerce Clause challenge under *Tennessee Wine* and Seventh Circuit precedent; therefore, the Court **grants** summary judgment to the State Defendants and WSDI as to Section 7.1-3-15-3(d).

### D.   Indiana Code § 7.1-5-11-1.5(a)

The Plaintiffs additionally challenge Indiana Code § 7.1-5-11-1.5(a) as violative of the Commerce Clause. This statute states,

> Except as provided in IC 7.1-3-26, it is unlawful for a person in the business of selling alcoholic beverages in Indiana or outside Indiana to ship or cause to be shipped an alcoholic beverage directly to a person in Indiana who does not hold a valid wholesaler permit under this title. This includes the ordering and selling of alcoholic beverages over a computer network (as defined by IC 35-43-2-3(a)).

The Plaintiffs argue that Code § 7.1-5-11-1.5 prohibits an out-of-state seller from delivering wine to anyone in Indiana other than a wholesaler. This prohibition benefits in-state wholesalers to the detriment of out-of-state retailers.  The Plaintiffs challenge the constitutionality of this statute alongside Section 7.1-3-15-3(d) and advance essentially the same arguments.

The State Defendants and WSDI likewise advance similar arguments in support of this statute alongside their arguments in support of Section 7.1-3-15-3(d).  They argue that the statute does not discriminate against out-of-state wine dealers because it applies equally to both in-state and out-of-state dealers; both must go through a permitted wholesaler.

The Court first notes that the statute, on its face, applies equally to in-state and out-of-state sellers. The statute previously was challenged on the basis that it violated the Commerce Clause by prohibiting direct shipment of wine to Indiana consumers from out-of-state wine dealers—which is the same basis for the constitutional challenge here. *See Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848 (7th Cir. 2000).  When the statute was challenged in *Bridenbaugh*, the language of the statute explicitly applied only to "a person in the business of selling alcoholic beverages in another state or country." *Id.* at 849.  Despite this explicit application to persons in another state or country, the Seventh Circuit upheld the law as a valid exercise of the State's power under Section Two of the Twenty-first Amendment to regulate importation of alcohol. The Seventh Circuit analyzed the statute and concluded that it did not "impose a discriminatory condition on importation" because all alcohol, regardless of its origination, had to pass through Indiana's wholesalers. *Id.* at 853–54. The statute has since been amended to apply to any "person in the business of selling alcoholic beverages in Indiana or outside Indiana."

For the reasons discussed in the section above concerning Section 7.1-3-15-3(d), the Court concludes that Section 7.1-5-11-1.5(a) is valid under the Twenty-first Amendment and is not

violative of the Commerce Clause. The State Defendants' argument is well-taken and supported by evidence and case law that Section 7.1-5-11-1.5(a) advances legitimate local interests by controlling the quantity of alcohol in the State to curtail public health concerns, protecting against unsafe or counterfeit products, and keeping alcohol out of the hands of minors. This is sufficient to satisfy *Tennessee Wine*'s concern of "whether the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." Thus, summary judgment is **granted** in favor of the State Defendants and WSDI as to Section 7.1-5-11-1.5(a).

## IV.   <u>CONCLUSION</u>

For the reasons explained above, the Court **GRANTS in part and DENIES in part** the parties' Cross-Motions for Summary Judgment ([Filing No. 49](); [Filing No. 57](); [Filing No. 61]()). Summary judgment is **GRANTED** in favor of the Plaintiffs as to Indiana Code § 7.1-3-21-3. The State Defendants (and their agents) may not enforce Indiana Code § 7.1-3-21-3 as a statutory requirement for the issuance of an alcoholic beverage retailer's or dealer's permit of any type. Summary judgment is **GRANTED** in favor of the State Defendants and WSDI as to Indiana Code §§ 7.1-5-11-1.5(a) and 7.1-3-15-3(d).

This Order does not address the Plaintiffs' Privileges and Immunities claim, and that claim remains pending for trial. Accordingly, no final judgment will issue at this time.

The parties are directed to contact the Magistrate Judge to schedule a status conference.

**SO ORDERED.**

Date: 3/30/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Joseph Beutel
EPSTEIN COHEN SEIF & PORTER
joe@beutellaw.com

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
Jefferson.Garn@atg.in.gov

Robert David Epstein
EPSTEIN COHEN SEIF & PORTER
rdepstein@aol.com

Jill Gagnon Haddad
INDIANA ATTORNEY GENERAL
jill.haddad@atg.in.gov

James E. Porter, II
EPSTEIN COHEN SEIF & FLORA
james@jeporterlaw.com

Sarah Ann Hurdle Shields
INDIANA ATTORNEY GENERAL
sarah.shields@atg.in.gov

James Alexander Tanford
EPSTEIN COHEN SEIF & PORTER
tanfordlegal@gmail.com

Lauren Ashley Lattea
INDIANA ATTORNEY GENERAL
lauren.lattea@atg.in.gov

John B. Herriman
CLARK QUINN MOSES SCOTT & GRAHN
bherriman@clarkquinnlaw.com

Michael P. Maxwell, Jr.
CLARK QUINN MOSES SCOTT & GRAHN
mmaxwell@clarkquinnlaw.com